[No. 1378.]

THE J. B. WHEELER BANKING CO. OF ASPEN v. HOLDEN
ET AL.

CONTRACTS—ASSUMPTION OF DEBT—NOVATION.
Where a corporation mortgaged its property to secure certain creditors and the mortgage was foreclosed and the property was bought at foreclosure sale for the mortgagees, and afterwards a contract was entered into between the mortgage creditors and another creditor who held the stock of the corporation whereby it was agreed that a new corporation should be organized to whom the mortgagees

should have conveyed the property and the old corporation should release its right of redemption and the new corporation was to appropriate the profits first towards paying off the mortgage debts, second other debts, and third to divide them amongst the stockholders, the stock of the new corporation being divided amongst the parties to the agreement according to their interests, *held* that under the contract the new corporation did not become liable for the debts of the old and the old corporation was not discharged from its debts beyond the amount for which the property sold, and as the old corporation was not discharged, its directors who had become liable by reason of a failure to comply with the requirements of section 252, General Statutes, were not discharged.

*Appeal from the District Court of Pitkin County.*

Mr. H. L. McNAIR, for appellant.

Mr. N. B. BACHTELL and Mr. HENRY T. SALE, for appellees.

THOMSON, P. J., delivered the opinion of the court.

Benjamin Ferris, as assignee for the benefit of its creditors, of the J. B. Wheeler Banking Company of Aspen, brought this action against Edward R. Holden and Richard Cline, as directors of the Holden Smelting and Milling Company, a corporation, to recover from them an indebtedness due to the banking company from the milling company; the ground of the defendants' liability being, as alleged, the failure of the milling company to comply with the requirements of section 252 of the general statutes, which provides that where the president and directors of a corporation have not made and recorded in the office of the secretary of state, and in the office of the recorder of deeds of the county in which the business of the corporation is carried on, a certificate showing that its capital stock has been fully paid in, unless the corporation shall, annually, within sixty days from the first day of January, make and file with the recorder of deeds, a report showing the amount of its capital stock, the proportion actually paid in, and the amount of existing debts, its directors

shall be jointly and severally liable for all its debts contracted during the year next preceding the time when the report should have been made, and until it shall be made.

The answer admitted the failure of the milling company to make and file the report, but set up some matters which were intended to be in avoidance of the effect of the default. These however, need not be noticed, because they cut no figure at the trial, and all claim on account of them is abandoned here. The answer also admitted the existence of the indebtedness against the milling company at the time of the commencement of the action, but alleged a subsequent contract of novation, whereby it was discharged from liability, and a corporation called the Aspen Union Smelting Company substituted as the banking company's debtor.

Before the trial the assignee made final settlement of the trust estate and was discharged, and the banking company having resumed business, was, on motion, substituted as plaintiff. The trial court found a novation as alleged, and rendered final judgment against the plaintiff, from which it prosecutes this appeal.

The only question presented to this court, and the only question which remains in the case, is whether the liability of the milling company was transferred to the smelting company in such manner that, as against the former, the indebtedness was canceled, and the latter became the sole debtor. The facts are not in dispute, and in order to an understanding of the positions which counsel of the respective parties have assumed in respect to them, it is necessary to give them somewhat in detail.

The Holden Smelting and Milling Company constructed, and for some time operated, works at Aspen for the treatment of ores. While constructing and operating its works, this company contracted indebtedness to R. W. Woodbury, in the sum of $46,698.92; to the Union National Bank of Denver, in the sum of $41,955.53; to the State Bank of Denver, in the sum of $31,120; and to the plaintiff, in the sum of $13,606.05. Charles H. Graham of Philadelphia had loaned

to the defendant, Holden, $100,000. Holden was a director
in the milling company, and also its president. He held all
of its stock but a few shares, and this he pledged to secure
the loan. He held the notes of the company in sums aggre-
gating about $200,000, for advancements which he had made
on its account; and, being pressed by Graham for payment,
Holden transferred these notes to him as additional security.
The other creditors, including the appellant, were pushing
the company on their claims; and to secure them, and for
their benefit, it executed a mortgage of all its property at
Aspen to a trustee. Mr. Graham brought suit by attachment
upon the notes which had been transferred to him, and the
mortgagees commenced proceedings for the foreclosure of
their mortgage. The mortgage and the attachment covered
the same property. A litigation ensued between Mr. Graham
and the mortgagees, each party claiming priority of lien, to
determine who was entitled to satisfaction first out of the
property. Priority was adjudged to the mortgagees, and a
decree of foreclosure entered in their favor. Mr. Graham
took steps to make and perfect an appeal. On the 16th day
of April, 1895, the property was sold pursuant to the decree,
Mr. Woodbury being the purchaser for himself and the other
mortgagees. On that day Mr. Graham and the mortgage
creditors entered into a contract which provided that, for the
purpose of settling their dispute amicably, a new corporation
should be formed, to which, upon its organization, Mr. Wood-
bury should convey the property he had purchased, and to
which Mr. Graham should cause to be conveyed all the right,
title and interest in the property of the Holden Smelting and
Milling Company, and that the capital stock of the company
should be divided among the parties to the contract in pro-
portion to the amounts due them respectively. The contract
further provided that after the organization of the company,
it should make an agreement with the parties to the contract
that it would divide its first profits among the parties, except
Graham, in proportion to their respective claims, until their
claims, without interest, should be paid in full; that then

the profits should go to Graham until his claim should be paid in full; but that if the mortgage creditors should not be paid in full on January 1, 1899, thereafter, the profits should be shared by all the parties to the contract, and that when they had received full payment, the profits should belong to the stockholders according to their holdings. The proposed new corporation was accordingly organized as the Aspen Union Smelting Company, the conveyances provided for were made, and on the 24th day of April, 1895, the corporation entered into the agreement with the parties to the first contract for which that contract made provision.

Mr. Holden testified that shortly before the incorporation of the Aspen Union Smelting Company, Mr. Graham approached him and stated that the latter company was about to be formed, and would assume all the debts of the Holden Smelting and Milling Company, and submitted a proposition to him as president of the milling company that it waive its rights of redemption by executing a deed of the property to the smelting company in consideration of its release from its indebtedness ; that Mr. Graham exhibited to the witness a copy of the contract of April 24, but that the contract of April 16 was not seen by him; that the witness finally agreed with Mr. Graham that the smelting company should assume all the debts of the milling company, and that the latter company should be released and discharged from liability on their account, and should execute the deed required, and that the deed was executed in pursuance of this agreement. The sum which was bid for the property was apportioned among the mortgagees, and the share allowed to the J. B. Wheeler Banking Company was sufficient to reduce its claim, which originally was $13,606.05, to $8,211.19.

It is earnestly and ably argued that the facts in evidence established the assumption by the smelting company of the debt of the milling company, and the extinguishment of the latter company's liability. Of course if such was the case, the discharge of the milling company's obligation carried with it the resulting liability of the directors. Counsel find the

assumption of the debt in the contract of April 24, and the release of the milling company in the agreement between Mr. Holden and Mr. Graham.   We shall therefore examine the contract and the agreement, and throw upon them the light of the attendant circumstances, to see whether they justify the conclusions which counsel have reached.

1. The contract of April 24, was executed in pursuance of the provisions of the contract of April 16.   The latter was an agreement preliminary to the taking of certain steps which were necessary to the consummation of the final contract.   It specified the terms of the final contract, in which, when executed, its provisions were followed and carried out.   Accordingly the Aspen Union Smelting Company bound itself to take charge of the works and operate them, and out of the first net profits, as profits should be realized, to pay the mortgage creditors their claims without interest, and afterwards, out of the net profits, to pay the claim of Mr. Graham; but if the profits realized before January 1, 1899, should be insufficient to pay the claims of the mortgage creditors, after that date they should be divided among all the creditors, Graham included, in proportion to the amounts unpaid; and upon payment of all the claims, without interest, the profits should go to the stockholders according to their holdings. The Aspen Union Smelting Company had been organized pursuant to the first agreement, and the title acquired by the mortgagees had been vested in it.   Its relation to its grantors was one of trust.   It undertook to manage the property and divide the profits among the beneficiaries.   It did not agree to pay the claims against the Holden Company.   Its only agreement was to distribute profits; and the claims were referred to only as bases on which the amounts to which the creditors might become severally entitled, should be estimated. It did not agree to pay anything, to any person, for any purpose, except conditionally; and the condition was that there should be profits out of which payment could be made.   It did not become a debtor.   So far as the obligation which it assumed is concerned, there is nothing to be found in the con-

tract except an agreement to administer the trust which had been created, and account to the proper parties for all moneys realized from the property with which it was intrusted. We say without hesitancy that by the terms of that contract the Aspen Union Smelting Company did not assume the debt of the Holden Smelting and Milling Company to the J. B. Wheeler Banking Company.

2. The effect upon the banking company of the agreement between Mr. Graham and Mr. Holden is dependent entirely on the authority of Graham to speak for the company. If such authority existed, it devolved on the defendants to show it. Counsel say that Mr. Graham visited the management of the Holden Smelting and Milling Company in behalf of its creditors, but they do not point us to the evidence on which they rely to justify the statement. If Graham had any authority to act for the creditors, it must be deducible from the two contracts to which he was a party, or from one or the other of them. There is nowhere else to look for it. If it cannot be found there, it is not in the record. The purpose of the first contract was an adjustment of the conflicting claims to priority, of the mortgagees on the one hand, and Mr. Graham on the other. As a settlement of conflicting interests was involved, the parties dealt at arms' length. Not only was the termination of litigation desirable, but for the purpose of obtaining immediate possession of the property the extinguishment of the milling company's right of redemption was necessary. The contract carefully specified what each party was to perform. Their mutual covenants were considerations for each other. A corporation was to be formed to take the title. The mortgagees were to cause to be conveyed to the corporation the interest they had acquired under their mortgage. This was the consideration moving from them. Mr. Graham was to cause the interest of the milling company to be transferred to the new company. This was the consideration moving from him. In procuring the conveyance from the milling company, Graham was not acting for the mortgagees, or for the new company, but for himself, and for the

sole purpose of carrying out his personal agreement, and entitling him to the benefit of the contract. He therefore did not deal with Holden in a representative capacity at all. The representations and promises which he made to Holden were his own, and bound nobody but himself. He could not release the milling company from its indebtedness to the banking company; and if, in consideration of his assumption to do so, the milling company parted with its interest, it must look to him for indemnity. To say very much in this connection about the second contract is needless. It contained what the first contract provided it should contain. Preliminary to this, it recited the procurement by Graham of a conveyance by the milling company of its equity of redemption to the smelting company, thus acknowledging the performance by him of his prior agreement, and corroborating the relation in which that agreement placed him to his cocontractors.

In view of what has been said, we think extended discussion of the law of novation unnecessary. The facts are not complicated, and the principles which apply to them are on the surface. The Aspen Union Smelting Company assumed no indebtedness, and did not become a debtor. No cause of action against it ever accrued to the banking company on account of the debt owing by the milling company. Unless the claim of the banking company against the milling company was released by the authority of the banking company it was not released, and remains a valid and enforceable claim. But the claim was not released by the authority of the banking company, consequently it was not released, and is valid and enforceable. The smelting company was not charged, and the milling company was not discharged; therefore there was no novation.

No question is made upon the liability of these defendants in case the liability of the milling company is unextinguished; and we assume that on the hypothesis of the validity of the claim against that company, the plaintiffs' right to a recovery in this action is conceded. The judgment will be reversed.

*Reversed.*